UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
URI SASSON and ARNOLD GARELICK,

                                        Plaintiffs,                    **OPINION & ORDER**

        - against -                                                    15-CV-6601 (CS)

HOWARD MANN, as personal representative of
the ESTATE OF PHILIP MANN,

                                        Defendant.
------------------------------------------------------------x

<u>Appearances</u>:

Clay J. Pierce
Richard M. Haggerty
Drinker Biddle & Reath LLP
New York, New York

Ashton Watkins
Law Offices of Ashton Watkins
Los Angeles, California
*Counsel for Plaintiff Sasson*

Reginald H. Rutishauser
Kantrowitz, Goldhamer & Graifman, P.C.
Chestnut Ridge, New York
*Counsel for Plaintiff Garelick*

Howard Mann
Law Firm of Howard Mann
New City, New York
*Counsel for Defendant*

<u>Seibel, J.</u>

        Before the Court are the motion for summary judgment of Plaintiff Arnold Garelick,

(Doc. 162), joined by Plaintiff Uri Sasson, (Doc. 168), and the cross-motion for summary

judgment of Defendant Howard Mann, as personal representative of the estate of Philip Mann,

(Doc. 182).  For the reasons set forth below, both motions are DENIED.

I. **BACKGROUND**

A. **Facts**

The following facts are taken from the parties' Local Civil Rule 56.1 Statements and supporting materials and are undisputed unless otherwise noted.

1. **Parties**

Plaintiffs Uri Sasson ("Uri") and Arnold Garelick ("Arnie") are Decedent Philip Mann's sons-in-law, (Doc. 209 ("D's 56.1 Resp.") ¶¶ 1-2),[1] and Defendant Howard Mann is Philip Mann's son and the executor of his estate, (Doc. 172 ("Ps' 56.1 Resp.") ¶ 1). Plaintiffs and Decedent co-owned several real estate companies in Rockland County, New York, including Associates of Rockland County, a general partnership; AOR Developers, Inc.; FilMar Homes Inc.; Wise Investors Inc. ("Wise"); and JHM Homes, Inc. (*Id.* ¶ 3.)

2. **The 1997 Agreement**

On September 30, 1997, Plaintiffs and Decedent entered into an agreement (the "1997 Agreement") that set forth terms for restructuring or disposing of the co-owned real estate companies. (*Id.* ¶ 4; *see* Rutishauser Decl.[2] Ex. 3 ("1997 Agr.").) The 1997 Agreement

---

[1] Defendant filed his Local Rule 56.1 response on January 11, 2019. (Doc. 185.) I granted Defendant leave to submit an amended response to address documents obtained after that submission. (Doc. 205.) I ordered Defendant to make no changes other than those occasioned by the newly obtained documents. (*Id.*) Defendant filed Doc. 209, Defendant's Amended Response to Plaintiff Arnold Garelick's Rule 56.1 Statement of Undisputed Material Facts, on April 25, 2019.

[2] Plaintiff Garelick submitted a declaration of counsel in support of his motion for summary judgment, (*see* Docs. 164-65), and another in further support, (*see* Doc. 169). Citations to the "Rutishauser Decl." refer to any of the three documents and use the exhibit numbers provided by Plaintiff. Defendant offers a declaration of counsel in support of his cross-motion for summary judgment and in opposition to Plaintiffs' motion for summary judgment, (*see* Doc. 183), and a supplemental declaration in opposition, (*see* Doc. 208). Citations to the "Mann Decl." refer to either document and use the exhibit letters provided by Defendant. Where the

provided for, among other things, the transfer of all Associates of Rockland County assets to

Associates of Rockland County LLC ("Rockland LLC") and SUGA Development, LLC ("SUGA

LLC"), and the dissolution of Associates of Rockland County.  (D's 56.1 Resp. ¶ 4; 1997 Agr.

§ 3.2.)  Section 1.1 of the Agreement provided that Decedent's stock in AOR Developers, Inc.

"shall be redeemed by AOR [Developers, Inc.]" and deemed canceled provided that, among

other things, Decedent "has been paid the salary set forth in Section 1.3 for the full two-year

period set forth in such Section."  (1997 Agr. § 1.1.)

Section 1.3 of the 1997 Agreement states, in part:

> Philip will continue in a management position as an employee of [AOR Developers, Inc.] for a two-year period commencing on the Closing Date [the date of the closing of the Associates of Rockland County debt refinancing described in section 3.3].  [AOR Developers, Inc.] agrees to pay Philip an annual salary of $200,000 for each year of the two-year period, which shall be payable in bi-monthly installments of $33,333.33 on the first business day of every other month during the two year period commencing on December 1, 1997, until a total salary for the two-year period of $400,000 has been paid in full. . . .
>
> [AOR Developers, Inc.] also agrees to pay Philip back salary on the Closing Date of $100,000, which Philip agrees will satisfy any and all of [its] obligation to pay him salary through the Closing Date. . . .

(*Id.* § 1.3.)

The 1997 Agreement also provided that Rockland LLC would refinance $9,350,000 in

debt owed by Associates of Rockland County to the Bank of New York and to Provident Savings

Bank, and that the new debt would be issued by Merrill Lynch Credit Corporation in an amount

not to exceed $11,300,000 (the "Merrill Lynch Debt").  (*Id.* § 3.3.)

Section 3.4 of the 1997 Agreement provides:

> Provided that (i) no foreclosure proceedings with respect to the Merrill Lynch Debt have been commenced and resulted in a foreclosure sale prior to the date of Philip's death, and (ii) Philip is released by Union State Bank (at no cost or

---

exhibits are not internally paginated, citations refer to the page numbers generated by the Court's
Electronic Case Filing ("ECF") system.

expense to Philip) from all personal liability to that Bank (the "Union State Bank Debt"), including but not limited to any personal liability in connection with a promissory note issued by Associates [of Rockland County] in the approximate principal amount of $1,250,000 that is secured by real property to be transferred by Associates [of Rockland County] to SUGA LLC in accordance with Section 3.2 above so that Philip thereafter has no personal liability in connection with the Union State Bank Debt (or any loan in substitution therefor), and (iii) Philip receives the full payment of the salary to which he is entitled under Section 1.3 above, Philip agrees that he will make a specific bequest in his Last Will and Testament of his interest in Rockland [LLC] to Arnie and Uri in equal shares. If these three conditions are satisfied but Philip's Last Will and Testament does not contain a specific bequest leaving Philip's interest in Rockland [LLC] to Arnie and Uri or their estates in equal shares and such interest is not actually delivered to Arnie and Uri or their estates free of all encumbrances and liens, then Philip agrees that Arnie and Uri shall have an option to purchase Philip's interest in Rockland [LLC] at any time after Philip's death (but not later than one year after his death) for a total purchase price of $1,000. This option shall be exercised by written notice to the Executor of Philip's estate within the option period referred to above. The closing of the exercise of the option shall take place promptly upon the exercise of the option.

(*Id.* § 3.4.)

No foreclosure on the Merrill Lynch Debt occurred. (Doc. 167 ("Ps' 56.1 Stmt.") ¶ 22 (citing Rutishauser Decl. Ex. 5 ("Sasson Tr.") at 109:24-110:3 ("Q: To your knowledge, was there ever a foreclosure proceeding with respect to the Merrill Lynch debt? A: Never."); *id.* Ex. 4 ("Garelick Tr.") at 81:10-13 ("Q: Were there ever foreclosure proceedings with respect to the Merrill Lynch debt? A: No.")).)[3] Further, Decedent was released from the Union State Bank

---

[3] Plaintiffs also cite Defendant's testimony that he did not know whether any foreclosure on the Merrill Lynch Debt occurred. (*See* Rutishauser Decl. Ex. 6 at 128:7-11.) Defendant responds that "[t]he cited testimony reveals only that none of the parties who were deposed have knowledge of a foreclosure on the Merrill Lynch Debt." (D's 56.1 Resp. ¶ 22.) While it may be that Defendant had no knowledge, Defendant here misconstrues the plain meaning of Plaintiffs' statements. It is evidence that foreclosure did not occur if a party who would know whether it occurred has no knowledge of it occurring. And to the extent Defendant is asserting an argument in his Local Rule 56.1 response, that response is improper. *JD2 Envtl., Inc. v. Endurance Am. Ins. Co.*, No. 14-CV-8888, 2017 WL 751157, at *1 n.1 (S.D.N.Y. Feb. 27, 2017). I "rel[y] exclusively on the parties' memoranda of law for such arguments." *Id.* I disregard non-factual material in the 56.1 statements.

4

debt.  (Ps' 56.1 Stmt. ¶ 24 (citing Rutishauser Decl. Ex. 8 (document entitled

"Acknowledgement and Release" dated Dec. 31, 1997, providing that Union State Bank

"releases Philip Mann . . . from any and all obligations") (emphasis omitted);[4] Sasson Tr. at

117:9-12; Garelick Tr. at 81:25-82:3).)  Finally, Plaintiffs documented the following payments to

Decedent:  (1) $100,000.00 on September 30, 1997, (Rutishauser Decl. Ex. 26 at 2),

(2) $27,345.00 on November 26, 1997, (*id*. Ex. 26 at 3), (3) $30,743.91 net on February 1, 1998,

(4) $24,022.15 net on April 1, 1998, (5) $24,048.00 net on June 1, 1998, (6) $24,041.77 net on

July 31, 1998, (7) $24,117.33 net on October 2, 1998, (8) $24,117.33 net on December 8, 1998,

(9) 24,117.34 net on February 2, 1999, (10) $24,092.34 net on March 31, 1999, (11) $24,116.97

net on June 2, 1999, and (12) 48,233.00 net on August 23, 1999, (*id*. Ex. 9 at 3, 21; *see id*. Ex. 9

at 13, 15-16, 18, 22).[5]  Plaintiffs also testified that all payments pursuant to section 1.3 were

made.  (Sasson Tr. at 114:8-17; Garelick Tr. at 87:7-14.)  Additionally, on August 16, 1999,

---

[4] In Defendant's 56.1 response, he denied "that any such 'release' was ever obtained." (D's 56.1 Resp. ¶ 24.)  This response was insufficient to dispute Plaintiffs' statement.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, [or] interrogatory answers . . . ."  Fed. R. Civ. P. 56(c)(1).  In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."  *Id*. (e)(2), (3).  Because Defendant did not "cit[e] to particular parts of materials in the record" to dispute the fact, *id*. (c)(1)(a), the Court considers it undisputed.  *See Victorinox AG v. B & F Sys., Inc.*, 114 F. Supp. 3d 132, 135 n.1 (S.D.N.Y. 2015), *aff'd*, 709 F. App'x 44 (2d Cir. 2017) (summary order), *as amended* (Oct. 4, 2017).

[5] The memo line on the ledger provided indicates that payments (3) through (8) were for $33,333.33 less tax withholdings; Plaintiffs also provided some worksheets showing those payroll withholdings.  (Rutishauser Decl. Ex. 9 at 3, 5-8.)  Another worksheet shows that payments (9) through (12) were for $33,333.33 or $66,666.66 gross.  (*Id*. Ex. 9 at 21; *see id*. Ex. 23 at 2 (referring to the $48,233.00 payment as "the $66,666.66 pay-off amount less the withholding").)  It seems plain that payment (2) was also the net of $33,333.33, so payments (2) through (12) total $399,999.96.

Decedent transferred his shares in AOR Developers, Inc.  (D's 56.1 Resp. ¶ 26; *see* Rutishauser Decl. Ex. 9 at 23-24.)

Section 3.5 of the 1997 Agreement provides that "Arnie, Uri and Philip agree to sign an Operating Agreement governing the operations of Rockland [LLC] in the form annexed hereto as Exhibit 3" and that "if there is a conflict between the provisions of the Operating Agreement and [the 1997] Agreement, the provisions of [the 1997] Agreement shall govern."  (1997 Agr. § 3.5.) According to Plaintiffs, the parties "separately" signed the two agreements, (Ps' 56.1 Stmt. ¶ 16); Defendant states that the 1997 Agreement and the Rockland LLC Operating Agreement "were simultaneously and contemporaneously executed as one transaction by the same parties at the same date and time," (D's 56.1 Resp. ¶ 16).  The parties also dispute whether any provision of the 1997 Agreement expressly incorporates the terms of the Operating Agreement.  Plaintiffs state that none does, (Ps' 56.1 Stmt. ¶ 17); Defendant states that the Operating Agreement "was expressly incorporated into the [1997 Agreement] in Section 3.5."  (D's 56.1 Resp. ¶ 17.)

The parties further dispute which version of the Operating Agreement governs.  Plaintiffs offer one version, (Rutishauser Decl. Ex. 16), and Defendant offers a document signed March 13, 2014 entitled "First Amendment to the Operating Agreement of Associates of Rockland County LLC," (Mann Decl. Ex. R ("First Amendment")), which Philip did not sign and which Defendant contends was created for Plaintiffs to provide to a lender, (Doc. 207 ("D's Supp. Opp.") at 5-6).  Plaintiffs state that the "interest" Philip was obligated to convey in section 3.4 of the 1997 Agreement refers to his 33.3% interest in Rockland LLC, (Ps' 56.1 Stmt. ¶ 18; *see* Rutishauser Decl. Ex. 16 sched. A (listing members as Arnie Garelick at 33.3%, Uri Sasson at 33.3%, Philip Mann at 33.3%, and Associates of Rockland County, Inc., at .1%)), but Schedule A of the First Amendment does not include Decedent as a member of Rockland LLC, (D's 56.1

6

Resp. ¶ 18; *see* First Amendment at 8 (listing members as Arnold Garelick at 49.75%, Uri

Sasson at 49.75%, and Associates of Rockland County, Inc., at .5%)), and Plaintiffs previously

represented to a lender that they each owned 50% of that entity, (Mann Decl. Ex. P; *see* D's

Supp. Opp. at 4-5).

      Section 4.1 of the 1997 Agreement provides that "no distributions . . . or other payments

will be made to the shareholders of Wise or to Arnie or Uri or any of their affiliates without

Philip's prior written consent thereto." (1997 Agr. § 4.1.)  Payments were made from Wise to

Arnie, Uri, and other individuals with their surnames in the years 2001 through 2004.  (Mann.

Decl. Ex. G.)

      Philip Mann died on October 19, 2014.  (D's 56.1 Resp. ¶ 28.)  His Last Will and

Testament did not include a bequest to Plaintiffs of his interest in Rockland LLC.  (*Id.* ¶ 29.)  On

January 28, 2015, counsel for Plaintiff Garelick sent Defendant's counsel a letter that

"provide[d] . . . notice that Mr. Garelick . . . exercises the option to pay the estate the sum of

$1,000.00 for the [D]ecedent's interest in Associates of Rockland LLC."  (*Id.* ¶ 32.)  On March

25, 2015, counsel for Plaintiff Sasson sent Defendant a letter that stated that "Mr. Sasson hereby

exercises the option to purchase the entirety of Philip Mann's 33.3% interest in Rockland LLC

for the agreed price of one thousand dollars."  (*Id.* ¶ 38.)  Sasson's counsel attached an

assignment and included a check for $1,000.  (*Id.* ¶¶ 38-39.)  Defendant rejected both attempts.

(*Id.* ¶¶ 33, 41.)

### B.   **Procedural History**

      Plaintiffs filed the instant lawsuit on August 20, 2015, (Doc. 1), and amended their

Complaint on August 10, 2016, (Doc. 30 ("AC")).  Plaintiffs allege that, pursuant to the 1997

Agreement, Decedent promised to make a specific bequest to Plaintiffs in his Last Will and

Testament of his share in Rockland LLC and that his failure to make the specified bequest is a breach of contract.  (*Id.* ¶ 1.)  Plaintiffs further assert that the 1997 Agreement stated that, in the event Decedent did not make the bequest to Plaintiffs and certain other conditions were met, Plaintiffs would have an option to purchase Decedent's interest in Rockland LLC for up to one year after his death.  (*Id.* ¶ 2.)  Plaintiffs allege that the failure of Decedent's estate to go forward with the transaction when Plaintiffs attempted to exercise that option also constitutes a breach of the 1997 Agreement.  (*Id.*)  They request that the Court declare that Decedent's estate is obligated to (1) transfer Decedent's interest in Rockland LLC to Plaintiffs in equal shares, ("Count One"), or (2) sell Decedent's interest in Rockland LLC to Plaintiffs for $1,000, ("Count Two").  (*Id.* at 11.)

After pre-motion letters and a conference, Defendant moved to dismiss, (Doc. 33), and I denied that motion, (Minute Entry dated Feb. 15, 2017).  Defendant answered Plaintiffs' AC on March 17, 2017, and asserted nine counterclaims against Plaintiffs.  (Doc. 48.)  Plaintiffs thereafter requested a pre-motion conference in anticipation of their motions to dismiss the counterclaims.  (Docs. 49, 50.)  A pre-motion conference was held on May 15, 2017, (Minute Entry dated May 15, 2017), and Defendant filed an amended answer and counterclaims on September 27, 2017, (Doc. 74).  Plaintiffs' motion to dismiss the amended counterclaims followed, (Docs. 92-93), which I granted in part and denied in part, (Minute Entry dated Sept. 5, 2018).  Discovery on Plaintiffs' claims is complete and discovery on Defendant's counterclaims is ongoing.

## II.  <u>LEGAL STANDARD</u>

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit

under the governing law . . . .  Factual disputes that are irrelevant or unnecessary will not be

counted."  *Id.*  On a motion for summary judgment, "[t]he evidence of the non-movant is to be

believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

The movant bears the initial burden of demonstrating "the absence of a genuine issue of

material fact," and, if satisfied, the burden then shifts to the non-movant to "present evidence

sufficient to satisfy every element of the claim."  *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d

Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "The mere existence of a

scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be

evidence on which the jury could reasonably find for the [non-movant]."  *Anderson*, 477 U.S. at

252.  The non-movant "must do more than simply show that there is some metaphysical doubt as

to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986), and "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd.*

*v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

This standard applies to cross-motions for summary judgment.  *See Morales v. Quintel*

*Entm't, Inc*., 249 F.3d 115, 121 (2d Cir. 2001); *C & A Carbone, Inc. v. County of Rockland*, No.

08-CV-6459, 2014 WL 1202699, at *5 (S.D.N.Y. Mar. 24, 2014).  Generally, in deciding cross-

motions for summary judgment, "each party's motion must be examined on its own merits, and

in each case all reasonable inferences must be drawn against the party whose motion is under

consideration."  *Morales*, 249 F.3d at 121; *see Chartis Seguros Mex., S.A. de C.V. v. HLI Rail &*

*Rigging, LLC*, 3 F. Supp. 3d 171, 179 (S.D.N.Y. 2014).  But where, as here, the motion and

cross-motion seek a determination of the same issues, the Court may consider them together. *Royal & Sun All. Ins., PLC v. E.C.M. Transp., Inc.*, No. 14-CV-3770, 2015 WL 5098119, at *2 (S.D.N.Y. Aug. 31, 2015); *Chartis Seguros*, 3 F. Supp. 3d at 179.

## III.   <u>DISCUSSION</u>

Because this is a diversity action, the Court must apply the choice of law principles of the forum state – here, New York – to determine which state's substantive law to apply to Plaintiffs' claims. *Banker v. Nighswander, Martin & Mitchell*, 37 F.3d 866, 871 (2d Cir. 1994) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  In this case, the parties do not argue choice of law.  But "the parties' briefs assume that New York law controls this issue, and such implied consent is sufficient to establish choice of law."  *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 61 (2d Cir. 2004) (alteration and internal quotation marks omitted).  And almost all the relevant events occurred in New York.  Accordingly, the Court applies New York law in deciding the instant motions.

### A.   <u>Breach of Duty to Make the Bequest</u>

Plaintiffs contend that the 1997 Agreement obligated Decedent "to make a bequest of his remaining interest in Rockland LLC upon [P]laintiffs' satisfaction of the three conditions in § 3.4" and that Decedent breached this duty when Plaintiffs fulfilled those three conditions and Decedent did not make the bequest.  (Ps' Mem. at 17.)  New York Estates, Powers & Trusts Law § 13-2.1 "allows a testator to contract outside the will to make a testamentary disposition."  *CP Found. of Nassau, Inc. v. Meyers*, No. 17-CV-1866, 2019 WL 1384083, at *5 (E.D.N.Y. Mar. 27, 2019) (internal quotation marks omitted).  The promise must be "in writing and subscribed by the party to be charged."  N.Y. Est. Powers & Trusts § 13-2.1(a)(2) (McKinney 2019).

Plaintiffs proffer evidence that they have satisfied the three conditions of § 3.4.  I examine each in turn.

### 1.    Foreclosure of the Merrill Lynch Debt

There is no genuine dispute of fact that no foreclosure on the Merrill Lynch Debt occurred.  (Ps' 56.1 Stmt. ¶ 22; *see* page 4 and note 3 above.)  But Defendant argues that section 3.4's condition (i) – that "no foreclosure proceedings with respect to the Merrill Lynch Debt have been commenced and resulted in a foreclosure sale prior to the date of Philip's death" – was not satisfied because it could not be satisfied until the moment immediately following Decedent's death and, "therefore, Decedent could not have breached the purported obligation to Plaintiffs to 'make a specific bequest in his Last Will and Testament of his interest in [Rockland LLC] to Arnie and Uri in equal shares.'"  (Doc. 186 ("D's Opp.") at 14 (quoting 1997 Agr. § 3.4).)  According to Defendant, "[t]he language may have been unartfully drafted and created an impossible condition, but it was accepted and agreed to by Plaintiffs and it says what it says." (*Id.* at 15.)  Plaintiffs argue that "[t]he only reasonable interpretation of the provision" is that once Decedent was paid (condition (iii)) and the Union State Bank debt canceled (condition (ii)), "in the absence of any foreclosure proceeding and sale [Decedent] was obligated to make a bequest."  (Ps' Mem. at 18.)  I agree.

As an initial matter, I do not see why condition (i) would be impossible to fulfill.  Philip obviously could not know when he was going to die, but he could know during his lifetime whether or not foreclosure proceedings had commenced.  So as long as no such proceedings had begun, he would have known that no foreclosure sale could result, and thus he would have known he had to make the bequest.  If a foreclosure were started, he would always have had the option to withdraw the bequest or make it conditional on there being no foreclosure sale.  Thus,

while the unpredictability of his date of death might make it impossible to know whether the condition was met before Philip died, Philip's obligations under the provision could easily have been fulfilled during his life.

> In any event,

> [u]nder New York law an interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible.  Rather, an interpretation that gives a reasonable and effective meaning to all terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect.

*Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) (internal quotation marks and citation omitted) (alteration in original) (collecting cases).  "A contract should not be interpreted to produce a result that is absurd, commercially unreasonable, or contrary to the reasonable expectations of the parties."  *In re Lipper Holdings, LLC*, 766 N.Y.S.2d 561, 562 (App. Div. 2003) (internal quotation marks and citations omitted).

Defendant's interpretation of section 3.4's first condition is absurd, commercially unreasonable, and contrary to the reasonable expectations of the parties.  It would render the entire provision meaningless.  Defendant's reading would make condition (i) impossible to fulfill, and if one of the conditions precedent is impossible, the obligations could not be performed.  Plaintiffs' interpretation is reasonable – the parties cannot reasonably have intended to agree to the performance of an impossible condition – and it gives effective meaning to the entire section.  Accordingly, Plaintiffs' interpretation of condition (i) is the only "reasonable" reading of it.  *See id.*  There being no evidence undermining Plaintiffs' evidence that no foreclosure occurred, there is no genuine dispute that condition (i) was met.

### 2. Union State Bank Debt

Second, Decedent was released from the Union State Bank debt.  (Ps' 56.1 Stmt. ¶ 24 (citing Rutishauser Decl. Ex. 8 (document entitled "Acknowledgement and Release" dated Dec. 31, 1997, providing that Union State Bank "releases Philip Mann . . . from any and all obligations") (emphasis omitted); Sasson Tr. at 117:9-12; Garelick Tr. at 81:25-82:3).) Defendant provides no evidence that could raise a fact issue as to this condition.  *See* note 4 above.

### 3. Decedent's Back Salary

Third, Plaintiffs testified that all payments pursuant to section 1.3 were made, (Sasson Tr. at 114:8-17; Garelick Tr. at 87:7-14), and their testimony to that effect is not merely conclusory. Rather, each Plaintiff had a specific recollection of how persistent Philip was, each time a payment was due, in collecting every penny.  (Sasson Tr. at 115:4-13; Garelick Tr. at 88:3-6.) Further, they are corroborated by documents.  Plaintiffs proffer evidence of payments to Decedent totaling $399,999.96 before tax withholding, showing that the $200,000 yearly salary for two years was paid.  (*See* Rutishauser Decl. Ex. 9 at 3, 5-9, 11-13, 18, 20-23; *id.* Ex. 26 at 2-3.)  Defendant contends that Plaintiffs have admitted that there is no "documentary evidence regarding the $100,000.00 back-salary payment due to Decedent."  (D's Opp. at 14; *see also* D's 56.1 Resp. ¶ 25 ("Plaintiffs have conceded that they have no documentation, proof, or other evidence showing payment of the specified $100,000 for back salary.").)  But, as noted, Plaintiffs have produced a ledger sheet showing a $100,000 payment on September 30, 1997. (Rutishauser Decl. Ex. 26 at 2.)  Plaintiffs provided this evidence in a supplementary disclosure filed on December 7, 2018.  (*See id.* Ex. 26.)  Yet in his amended 56.1 response filed April 25, 2019, Defendant failed to address this evidence.  (*See* D's 56.1 Resp.)  Defendant has failed to

"show[] that the materials cited do not establish the absence . . . of a genuine dispute."  Fed. R. Civ. P. 56(c)(1)(B).  Through their testimony, corroboration from checks and ledgers, and strong corroboration from Philip's transferring his shares, which he did not have to do unless he had been paid in full, Plaintiffs have shown the absence of a fact issue, and Defendant has not presented evidence to the contrary.

Thus there is no dispute of material fact as to whether the conditions precedent in section 3.4 were met; they were, giving rise to a duty on Decedent's part to make the bequest unless that performance was otherwise excused.

### B.   **Breach of the Option Agreement**

Plaintiffs also ask the Court to grant summary judgment on Count Two of the AC and declare that Defendant breached his duty under section 3.4 of the 1997 Agreement because he did not transfer Decedent's interest in Rockland LLC to Plaintiffs when they gave notice of their intention to exercise the section 3.4 option.  (Ps' Mem. at 21.)  The parties do not dispute that the estate is bound by Decedent's contractual obligations, but Defendant argues that Plaintiffs failed to exercise the option properly.  (D's Opp. at 17-19.)  Plaintiffs contend that they properly exercised the option and that Defendant refused to perform.  (Ps' Mem. at 21.)

"An option contract is a promise which meets the requirements for the formation of a contract and limits the promisor's power to revoke an offer."  *Wells Fargo Bank, Nat'l Ass'n v. Davidson Kempner Capital Mgmt. LLC*, 32 F. Supp. 3d 436, 441 (S.D.N.Y. 2014) (internal quotation marks omitted), *aff'd sub nom. Wells Fargo Bank, Nat'l Ass'n v. Bedford CMBS Acquisitions LLC*, 626 F. App'x 341 (2d Cir. 2015) (summary order).  "Once the optionee gives notice of his intent to exercise the option in accordance with the agreement, the unilateral option agreement ripens into a fully enforceable bilateral contract."  *Kaplan v. Lippman*, 75 N.Y.2d 320,

14

325 (1990).  "Strict adherence to the terms of an option is required," *Wells Fargo Bank*, 32 F.

Supp. 3d at 441, and "the terms of the option control the manner in which it is to be exercised,"

*Kaplan*, 75 N.Y.2d at 325; *see FaceTime Commc'ns, Inc. v. Reuters Ltd.*, No. 08-CV-4730, 2008

WL 2853389, at *4 (S.D.N.Y. July 22, 2008).

> Section 3.4 provides that
>
> Philip agrees that Arnie and Uri shall have an option to purchase Philip's interest in Rockland [LLC] at any time after Philip's death (but not later than one year after his death) for a total purchase price of $1,000.  This option shall be exercised by written notice to the Executor of Philip's estate within the option period referred to above.  The closing of the exercise of the option shall take place promptly upon the exercise of the option.

(1997 Agr. § 3.4.)  Both Plaintiffs sent timely notice that they intended to exercise the option.

(D's 56.1 Resp. ¶¶ 32, 38.)  Plaintiff Sasson's counsel sent a letter to Defendant, care of his

former attorney, stating that Sasson was exercising the option and enclosing a check for $1,000.

(*Id.* ¶¶ 38-39.)  This was a proper exercise of the option.  Plaintiff Garelick's counsel sent a letter

to Defendant's former attorney stating that "[t]he purpose of this letter is to provide Howard

Mann . . . written notice that Mr. Garelick hereby exercises the option."  (*Id.* ¶ 32.)  This exercise

was also proper because advising Defendant's attorney of the exercise provided notice to

Defendant, and, indeed, it would have been unethical for an attorney to do it any other way.  *See*

N.Y. R. Prof'l Conduct 4.2.

But Defendant argues that Plaintiffs "failed to exercise the option in the manner

prescribed by the 1997 Agreement."  (D's Opp. at 17.)  Defendant contends that several terms

indicate that the option was a joint option:  the term "and" in "Arnie and Uri," "an" in "an

option," and "total" in "total purchase price."  (*Id.* at 17-18.)  According to Defendant, "Plaintiffs

together shared a joint option . . . regardless of whether or not the 1997 Agreement actually uses

the word 'joint,'" and the separate notices of exercise of the option do not suffice.  (*Id.* at 18.)

Defendant further contends that Plaintiffs' interpretation – which "contemplated that either Uri or Arnie could have properly exercised the option, for his own benefit, and taken the entirety of Decedent's interest for himself" – is "absurd and untenable." (Doc. 187 at 7.) In other words, he contends, Plaintiffs' exercises were defective because each attempted to secure Decedent's entire 33.3% interest for himself. I disagree.

"The courts will not imply a term which the parties themselves failed to insert." *Mitchell v. Mitchell*, 440 N.Y.S.2d 54, 55 (App. Div. 1981) (citing *Nichols v. Nichols*, 306 N.Y. 490 (1964)). Defendant would have the Court read in the word "joint" where it does not appear and require Plaintiffs to have "collaborate[d]" to exercise the option. (*See* D's Opp. at 17.) But "courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." *Cirino v. City of N.Y. (In re World Trade Ctr. Disaster Site Litig.)*, 754 F.3d 114, 123 (2d Cir. 2014) (internal quotation marks omitted). The 1997 Agreement does not require that the notice be given in any particular form other than "by written notice," *see Getty Ref. & Mktg. Co. v. Zwiebel*, 604 F. Supp. 774, 778 (D. Conn. 1985) (rejecting the reading of a notice provision "so restrictive" that it "would condition the effectiveness of notice on the use of one method of transmission" when other methods are not expressly excluded), nor does it specify how or whether Philip's share would be divided prior to sale. Even if each Plaintiff was trying to pull a fast one on the other, the letters still provided notice to Defendant. Defendant's interpretation would defy the mandate of "[s]trict adherence to the terms of [the] option." *Wells Fargo Bank*, 32 F. Supp. 3d at 441.

16

I thus find that there is no genuine factual dispute that Plaintiffs exercised the option. But Defendant's performance could be excused if Plaintiffs materially breached other provisions of the 1997 Agreement, and that contract is not divisible, as discussed below.

**C.      Was Performance Excused?**

**1.      Fulfillment of Conditions Precedent**

"Under New York law, a party's performance under a contract is excused where the other party has substantially failed to perform its side of the bargain or, synonymously, where that party has committed a material breach." *Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 136 (2d Cir. 2016) (citing *Hadden v. Consol. Edison Co. of N.Y.*, 34 N.Y.2d 88, 96 n.9 (1974)). According to Defendant, Philip's and Defendant's performances are excused even if Plaintiffs properly exercised the option, because Plaintiffs breached the 1997 Agreement, (D's Opp. at 16-17), or at least "[t]here are genuine factual issues as to whether Plaintiffs performed multiple provisions of the 1997 Agreement (in addition to their obligations under Section 3.4)," (*id.* at 13).

Decedent plainly agreed to perform his section 3.4 obligation upon Plaintiffs' performance of section 3.4's three conditions precedent. That section expressly conditions Decedent's performance on three conditions, each of which is clearly identified as a condition. (1997 Agr. § 3.4 (referring to "these three conditions").) *See Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of N.Y.*, 735 F. Supp. 2d 42, 74 (S.D.N.Y. 2010) ("'A contractual duty ordinarily will not be construed as a condition precedent absent clear language showing that the parties intended to make it a condition.'") (quoting *Mullany v. Munchkin Enters., Ltd.*, 893 N.Y.S.2d 714, 717 (App. Div. 2010)). Condition (iii) – Plaintiffs' promise to pay salary and back salary to Decedent – also appears as its own provision elsewhere in the Agreement, (*see*

1997 Agr. § 1.3), but a contractual provision can be both a condition precedent and a separate promise, Restatement (Second) of Contracts § 227 cmt. d (1981) ("When an obligor wants the obligee to do an act, the obligor may make his own duty conditional on the obligee doing it and may also have the obligee promise to do it.").  Had the parties intended to require performance of the entire contract before Decedent's section 3.4 obligations came due, then section 3.4's condition (iii) would be superfluous.  "[A]n interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible."  *Galli*, 973 F.2d at 149 (internal quotation marks and citation omitted) (second alteration in original).  By singling out one contractual obligation as having to be fulfilled (along with two other conditions not required elsewhere in the contract), the parties must have agreed that the other provisions of the contract were not conditions precedent to Decedent's obligation to make the bequest.  Had the parties intended full performance of the contract to be a condition precedent, section 3.4 would have required no foreclosure by Merrill Lynch, release of Philip's obligations to Union State Bank, and fulfillment of all other promises in the 1997 Agreement.  Accordingly – and subject to the discussion below – Plaintiffs fulfilled the three conditions precedent to Decedent's performance under section 3.4; Philip was obligated to make the bequest; and when no bequest was made, Defendant became obligated to transfer Decedent's interest upon Plaintiffs' exercise of the option.

### 2.    Material Breach

Even so, Defendant's performance under section 3.4 may be excused if Plaintiffs breached a material provision of the contract.  (*See* Ps' Mem. at 22-23.)  "A party's obligation to perform under a contract is only excused where the other party's breach of the contract is so substantial that it defeats the object of the parties in making the contract."  *Frank Felix Assocs.,*

*Ltd. v. Austin Drugs, Inc.*, 111 F.3d 284, 289 (2d Cir. 1997).  "If a breach is only partial, it may

entitle the non-breaching party to damages for the breach, but it does not entitle him simply to

treat the contract as at an end."  *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442

F.3d 101, 118 (2d Cir. 2006); *see Jordan v. Can You Imagine, Inc.*, 485 F. Supp. 2d 493, 498

(S.D.N.Y. 2007) ("[I]f a breach is relatively minor and not of the essence, the plaintiff is still

bound by the contract and may not abandon performance and obtain damages for a total breach

by the defendant.") (internal quotation marks omitted) (alteration in original).  "For a breach to

be material, it must go to the root of the agreement between the parties" or "touch[] the

fundamental purpose of the contract."  *New Windsor Volunteer Ambulance Corps, Inc.*, 442 F.3d

at 117 (internal quotation marks omitted).

   Defendant first contends that Plaintiffs have not shown whether AOR Developers, Inc.,

distributed to Decedent one-third of any net recovery received in connection with a claim against

United Water Company as required under section 1.7 of the 1997 Agreement.  (D's Opp. at 16;

*see* 1997 Agr. § 1.7.)  But "[w]hen the nonmoving party bears the burden of proof at trial,

summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish

the existence of an element essential to [its] case."  *Nebraska v. Wyoming*, 507 U.S. 584, 590

(1993) (internal quotation marks omitted) (second alteration in original).  The burden of proof on

the issue of whether Defendant's performance is excused because of a material breach by

Plaintiff is on Defendant.  *See Brignoli v. Balch, Hardy & Scheinman, Inc.*, 577 N.Y.S.2d 375,

375 (App. Div. 1991) ("The defendant bears the burden of proof on an affirmative defense.");

Doc. 48 at 10 (alleging as an affirmative defense that Plaintiffs' claims are barred by their

breaches); *see also Weinberg v. Transamerica Ins. Co.*, 62 N.Y.2d 379, 383 (1984) ("[I]t is

usually the burden of the party seeking to be excused from performance of a contract obligation

on the ground that the other party has failed to perform his reciprocal obligations, to establish

such failure."); *cf. Barton Grp., Inc. v. NCR Corp.*, 796 F. Supp. 2d 473, 498 (S.D.N.Y. 2011)

("[W]hen a defendant alleges that a plaintiff's breach of a warranty contained in the contract

excuses the defendant's nonperformance, the defendant has the burden of proving that

defense."), *aff'd*, 476 F. App'x 275 (2d Cir. 2012) (summary order).  Defendant has not set forth

"specific facts through affidavits, depositions or admissions" demonstrating that Plaintiffs

breached section 1.7 or that such a breach was material.  *See Argonaut P'ship v. Sidek*, No. 96-

CV-1967, 1996 WL 617335, at *7 (S.D.N.Y. Oct. 25, 1996), *aff'd sub nom. Argonaut P'ship*

*L.P. v. Sidek*, 141 F.3d 1151 (2d Cir. 1998); *Celotex*, 477 U.S. at 324.

Second, Defendant argues that Plaintiffs have not shown whether the parties liquidated

FilMar Homes, Inc., upon receiving the proceeds from a condemnation proceeding.  (D's Opp. at

16; *see* 1997 Agr. § 2.)  But again, as the nonmovant seeking to prove his performance was

excused, Defendant bears the burden of showing Plaintiffs' breach, and he has not done so here.

Third, Defendant contends Plaintiffs breached the provision of the 1997 Agreement

prohibiting them from making payments from Wise to Wise's shareholders and to themselves or

their affiliates without Decedent's written consent.  (D's Opp. at 16; *see* 1997 Agr. § 4.1.)  A

checkbook register for Wise shows such payments, but there is no evidence of Decedent's

written consent.  (Mann Decl. Ex. G.)  Accordingly, Defendant has put forth evidence showing

that Plaintiffs may have breached section 4.1.

But any such breach might not be material.  Payments from Wise do not seem to go to the

"root" of the agreement, which was Decedent's exit from several co-owned businesses, most

particularly AOR Developers, Inc., (*see* 1997 Agr. §§ 1.1-1.8), and Associates of Rockland

County, (*id.* §§ 3.1-3.7).  None of the other provisions of the 1997 Agreement relate to section

4.1, whereas others are interdependent, (*see, e.g.*, *id.* §§ 1.3, 3.4), so breach of section 4.1 would not frustrate the purpose of the contract.  And the magnitude of the purported breach – twenty-two payments totaling $208,617.24, (*see* Mann Decl. Ex. G) – may not be substantial enough, in view of Plaintiffs' substantial performance of the other contract provisions, including the salary paid to Decedent and the release of his responsibility for substantial indebtedness, to defeat the object of the parties in making the contract.  *See Frank Felix Assocs.*, 111 F.3d at 289.  Because the parties have not briefed the issue of materiality, however, I decline to decide on this motion that any such breach was immaterial as a matter of law, and thus I decline to find as a matter of law that Defendant's performance under section 3.4 was not excused.  *See Jordan*, 485 F. Supp. 2d at 503 (declining to grant summary judgment where "the parties have not addressed the materiality of [a] provision . . . , and thus the materiality of the provision remains genuinely at issue").

### 3.      Divisibility

Plaintiffs contend that the 1997 Agreement is divisible and, therefore, even a material breach by Plaintiffs of provisions other than section 3.4 does not excuse Defendant's performance under section 3.4.  (Doc. 170 ("Ps' Reply") at 6-7.)  *See Rudman v. Cowles Commc'ns, Inc.*, 30 N.Y.2d 1, 13 (1972) (breach of one provision does not undo obligation under another provision if contract separable);[6] *Samba*, 2009 WL 705537, at *5 (if contract divisible, party "could breach one [provision] without precluding recovery on the other).  "[U]nder New York law, whether a contract is divisible is a question of intent, determined from the language of

---

[6] "The words divisible and severable are used interchangeably in the case law, and have the same meaning."  *Samba Enters., LLC v. iMesh, Inc.*, No. 06-CV-7660, 2009 WL 705537, at *5 n.4 (S.D.N.Y. Mar. 19, 2009), *aff'd sub nom. Samba Enters., Ltd. v. iMesh, Inc.*, 390 F. App'x 55 (2d Cir. 2010) (summary order).

the contract and the circumstances under which the contract was made." *Lazard Freres & Co. v. Crown Sterling Mgmt., Inc.*, 901 F. Supp. 133, 136 (S.D.N.Y. 1995). A contract is divisible where "(1) the parties' performances can be apportioned into corresponding pairs of partial performances, and (2) the parts of each pair can be treated as agreed equivalents." *Ginett v. Computer Task Grp., Inc.*, 962 F.2d 1085, 1098 (2d Cir. 1992). "Where the intent of the parties is not clear from the language of the contract itself, . . . [divisibility] is a question of fact to be decided by the jury." *GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F. Supp. 2d 308, 328 (S.D.N.Y. 2009); *cf. Lowell v. Twin Disc, Inc.*, 527 F.2d 767, 769-70 (2d Cir. 1975) ("Whether the parties intended that the two agreements should be interdependent is a question of fact which turns upon the circumstances of each case.").

The 1997 Agreement lends some support to each party's position. The parties entered into a single agreement governing several co-owned businesses.[7] The 1997 Agreement, in referring to itself, uses singular nouns, (*e.g.*, 1997 Agr. §§ 6.3-6.5 ("This Agreement")), but its prefatory section begins, "In consideration of the mutual covenants and promises contained herein, the parties hereto agree as follows," (*id.* at 2). The Agreement lacks a severability clause and any obvious unit-for-unit transactions. *Compare* 1997 Agr., *with British Films Do Brasil, Ltda. v. London Film Prods., Inc.*, 166 N.Y.S.2d 703, 705 (Sup. Ct. 1957) ("[S]ince there were 23 pictures involved, and royalty payments of $23,000 made, it seems that the rate was $1,000 each."). It is possible, however, to determine the consideration for various parts of the Agreement, (*see, e.g.*, 1997 Agr. § 1.6 (office in exchange for services); *id.* § 3.6 (Union State

---

[7] The parties dispute whether the 1997 Agreement and the Operating Agreement are separate contracts, (*see* Ps' Mem. at 12-17; D's Supp. Opp. at 2-4), and although I think Plaintiffs have the better of the argument, I need not reach that issue here because Defendant does not argue that Plaintiffs' alleged breaches of the Operating Agreement excuse his performance of the 1997 Agreement, (D's Opp. at 2).

Bank debt and salary in exchange for interest in SUGA LLC)), including the provision at issue,
(*see id.* § 3.4 (interest in Rockland LLC in exchange for three conditions precedent)).  Given this
ambiguity, I find that the parties' intent with regard to whether they intended the contract to be
divisible is an issue of fact precluding summary judgment.

      **D.**    **Impossibility**

      Defendant further urges that "the Court is not able to evaluate Plaintiffs' claims on
summary judgment without looking at both [the 1997 Agreement and the Operating
Agreement]."  (D's Supp. Opp. at 3 (emphasis omitted).)  According to Defendant, a document
attached to the First Amendment shows that Decedent had no interest in Rockland LLC, and thus
he "could not have breached an agreement to bequeath a phantom interest that he did not own."
(*Id.* at 6.)  *Compare* Ps' 56. 1 Stmt. ¶ 18, *and* Rutishauser Decl. Ex. 16 sched. A (listing
members as Arnie Garelick at 33.3%, Uri Sasson at 33.3%, Philip Mann at 33.3%, and
Associates of Rockland County, Inc., at .1%), *with* D's 56.1 Resp. ¶ 18, *and* First Amendment at
8 (listing members as Arnold Garelick at 49.75%, Uri Sasson at 49.75%, and Associates of
Rockland County, Inc., at .5%), *and* Mann Decl. Ex. P (listing sole members as Arnold Garelick
and Uri Sasson, each at 50%, and stating "Philip Mann, a former member is no longer a member
or manager with [Rockland LLC]").

      Plaintiffs argue that the documents showing that Philip had no ownership of Rockland
LLC (which documents Defendant says were submitted by Plaintiffs to potential lenders in 2004
and 2014) merely confirm that Philip had only a nominal interest in the company subject to his
transfer obligation upon his death.  (Doc. 211 at 2-3.)  They argue that these documents are
consistent with their position that Philip "wanted 'out'" of all the companies and only retained a
nominal interest in Rockland LLC to avoid a large tax obligation that would accrue if he divested

himself of his interest before his death.  (Ps' Mem. at 4.)  Whether Philip tried to cheat the taxing authorities, or Plaintiffs tried to fool the banks, or both, or neither, need not be addressed on this motion.

For purposes of Plaintiffs' motion, Defendant argues that these documents create a fact dispute with respect to whether Philip owned any piece of Rockland LLC at the time of his death and, thus, whether he owned anything that he was obligated to transfer.  (D's Supp. Opp. at 5-6.)[8]  But they create no *genuine* dispute of fact on that subject, because Defendant has judicially admitted that Philip owned a portion of Rockland LLC at the time of his death.  (*E.g.*, Doc. 174 ¶ 20 ("Defendant . . . admits that the Decedent maintained his ownership and membership interest in Associates of Rockland County, LLC ('Rockland LLC') at the time of his death."); *id.* ¶ 144 ("Decedent did not at any time relinquish, modify, change, transfer, reduce, or assign his membership interest in [Rockland LLC]."); Doc. 203 at 2 n.1 ("Defendant maintains (and has always maintained) that Decedent owned 33.3% of [Rockland LLC] from September 30, 1997 up through the date of his death (and that the Estate currently owns such 33.3% interest)."); Doc. 184 ¶ 28 (referring to "the Estate's 33.3% interest").)  Judicial admissions "are formal concessions in the pleadings in the case . . . that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact."  *Hoodho v. Holder*, 558 F.3d 184, 191 (2d Cir. 2009).  Statements other than pleadings, including those in briefs or formal remarks

---

[8] Defendant goes so far as to suggest that these documents entitle him to summary judgment on the ground that Philip could not make a bequest of that which he did not own, (D's Supp. Opp. at 6-7), but he cannot seriously maintain that Philip had no interest in Rockland LLC; if that were true, Plaintiffs would be the sole owners of Rockland LLC and free to dispose of its property as they see fit – which is the opposite of what Defendant wants.  Indeed, he concedes that for purposes of his counterclaims, he will argue that the documents at issue are fraudulent. (*Id.* at 7.)  I do not see how Defendant can be allowed to rely on the documents to seek summary judgment, or even attempt to raise a genuine issue of material fact on Plaintiffs' claims, when he simultaneously contends that they are not genuine.

by counsel, also bind the client as judicial admissions.  *See Purgess v. Sharrock*, 33 F.3d 134,

144 (2d Cir. 1994) (briefs); *Kregler v. City of N.Y.*, 821 F. Supp. 2d 651, 656 (S.D.N.Y. 2011)

(formal admission of fact by counsel), *aff'd*, 604 F. App'x 44 (2d Cir. 2015) (summary order).

"When a party makes a judicial admission, that party 'normally is bound [by that admission]

throughout the course of the proceeding.'"  *Hausler v. JP Morgan Chase Bank, N.A.*, 127 F.

Supp. 3d 17, 37 (S.D.N.Y. 2015) (alteration in original) (quoting *Bellefonte Re Ins. Co. v.

Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985)).  Having repeatedly formally conceded that

Philip had a 33.3% interest in Rockland LLC at the time of his death, Defendant cannot raise a

genuine dispute as to that fact.[9]

### E.   <u>Declaratory Judgment Act</u>

Finally, in what he concedes is a second bite at the apple, Defendant contends that

Plaintiffs' claims are inappropriate uses of the Declaratory Judgment Act.  (D's Opp. at 19.)

"The Declaratory Judgment Act provides that, 'in a case of actual controversy within its

jurisdiction any court of the United States may declare the rights and other legal relations of any

interested party seeking such declaration, whether or not further relief is or could be sought.'"

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (quoting 28 U.S.C. § 2201(a))

(alterations omitted); *see* Fed. R. Civ. P. 57.  "In deciding whether to entertain an action for

declaratory judgment, [the Second Circuit has] instructed district courts to ask:  (1) whether the

judgment will serve a useful purpose in clarifying or settling the legal issues involved; and

(2) whether a judgment would finalize the controversy and offer relief from uncertainty."

---

[9] Further, all Plaintiffs seek is a declaration that Defendant must transfer Philip's estate's
interest.  Whether that interest is 33.3%, as Defendant concedes, or zero, as Defendant attempts
to argue here, is no barrier to such a declaration.  Defendant would have the obligation to transfer
the interest, whatever it is.

*Commercial Lubricants, LLC v. Safety-Kleen Sys., Inc.*, No. 14-CV-7483, 2017 WL 3432073, at

*17 (E.D.N.Y. Aug. 8, 2017) (internal quotation marks omitted).  "The existence of another

adequate remedy does not preclude a declaratory judgment that is otherwise appropriate."  Fed.

R. Civ. P. 57.

As I explained in my bench ruling denying Defendant's motion to dismiss on February

15, 2017, which I incorporate by reference, a judgment in this case will serve a useful purpose in

that it will clarify for the Probate Court that to which Plaintiffs are entitled.[10]  Since 2015, I have

exercised my discretion to hear this case, *see Wilton v. Seven Falls Co.*, 515 U.S. 277, 286

(1995), and I will continue to do so.  Declaratory judgment is appropriate here, and, accordingly,

summary judgment for Defendant on this ground is denied.

*             *             *

Accordingly, whether (1) Plaintiffs breached section 4.1, (2) such breach was material,

and (3) the parties intended section 3.4 to be divisible are open questions of fact for trial and

preclude summary judgment on Plaintiffs' first and second claims.  Defendant's motion for

summary judgment on both claims is also denied.

---

[10] Defendant argues that, because litigation will continue on his counterclaims, declaratory judgment here will not provide relief from uncertainty.  (*See* D's Opp. at 22-23.)  But such a judgment will resolve the open question in the Probate Court – the disposition of Philip's interest – even if the counterclaims might entitle Defendant to damages in this Court.  Further, in light of the disposition above, litigation will continue on Plaintiffs' claims as well as on the counterclaims.  As discovery on the counterclaims is close to concluding, and there is some overlap in the factual issues remaining in both sets of claims (such as whether payments by Wise are a breach of the 1997 Agreement), resolving them together would be efficient.  Defendant's other arguments are without merit for substantially the reasons cited by Plaintiffs.  (*See* Ps' Reply at 18-20.)

**IV.**   <u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs' motion for summary judgment is DENIED, and

Defendant's cross-motion for summary judgment is DENIED.  The Clerk of Court is respectfully

directed to terminate the pending motions.  (Docs. 162, 182.)  I will see the parties at the already

scheduled October 17, 2019 conference.

**SO ORDERED.**

Dated:  August 2, 2019
        White Plains, New York

_____
    CATHY SEIBEL, U.S.D.J.